**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LUKASZ JAN WESELINSKI,**<br>**540 Lake Avenue, Apt. 5**<br>**Hancock, MI 49930-1938** ) ) ) | |
| ) | |
| **Plaintiff,** ) | **COMPLAINT FOR DECLARATORY AND** |
| ) | **INJUNCTIVE RELIEF AND REVIEW OF** |
| **v.** ) | **AGENCY ACTION UNDER THE** |
| ) | **ADMINISTRATIVE PROCEDURES ACT** |
| **ELAINE DUKE, Acting Secretary, U.S.** ) | |
| **Department of Homeland Security, in** ) | **CIVIL ACTION NO._____** |
| **her official capacity as well as her** ) | |
| **successors and assigns,** ) | **ALIEN NO.: 216035057** |
| **245 Murray Lane, S.W.,** ) | |
| **Building 410,** ) | **AGENCY CASE NUMBER: LIN1719950982** |
| **Washington, D.C.  20528,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JEFFERSON B. SESSIONS III, Attorney** ) | |
| **General of the United States, in his** ) | |
| **official capacity as well as his** ) | |
| **successors and assigns,** ) | |
| **U.S. Department of Justice,** ) | |
| **950 Pennsylvania Avenue, N.W.,** ) | |
| **Washington, D.C. 20530-0001,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **L. FRANCIS CISSNA,  Director, U.S.** ) | |
| **Department of Homeland Security, U.S.** ) | |
| **Citizenship and Immigration Services,** ) | |
| **in his official capacity, as well as his** ) | |
| **successors and assigns,** ) | |
| **20 Massachusetts Avenue, N.W.,** ) | |
| **Washington, D.C. 20529,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DONALD NEUFELD, Associate** ) | |
| **Director, Service Center Operations** ) | |
| **Directorate, U.S. Department of** ) | |
| **Homeland Security, U.S. Citizenship** ) | |
| **and Immigration Services, in his** ) | |
| **official capacity, as well as his** ) | |
| **successors and assigns,** ) | |
| **20 Massachusetts Avenue, N.W.,** ) | |
| **Washington, D.C. 20529,** ) | |
| ) | |

**and**                                                          )
                                                                )
**KRISTINE R. CRANDALL, Acting**                                )
**Center Director, Nebraska Service**                           )
**Center, U.S. Citizenship and**                                )
**Immigration Services, U.S. Department**                       )
**of Homeland Security, in her official**                       )
**capacity, as well as her successors**                         )
**and assigns, 850 S Street, Lincoln, NE**                      )
**68501,**                                                      )
                                                                )
        **Defendants.**  )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURES ACT

Plaintiff, Dr. Lukasz Jan Weselinski ("Plaintiff"), through undersigned counsel, alleges as follows.

## I.      INTRODUCTION

1.      Plaintiff brings this action to challenge the Defendant U.S. Citizenship and Immigration Services's ("USCIS") improper denial of the Form I-140 Petition for Immigrant Worker (hereinafter "I-140 petition") filed by Plaintiff Dr. Weselinski. Dr. Weselinski's I-140 petition sought to classify himself as an employment-based immigrant. Specifically as an alien of extraordinary ability in the field of synthetic organic chemistry in the areas of the synthesis and application of organic catalysts, the synthesis of metal-organic frameworks and organic polymers, and the application of organic compounds for biological systems, in accordance with 8 U.S.C. §1153(b)(1)(A).

2.      Dr. Weselinski and the United States are being prejudiced by Defendant USCIS's action because Dr. Weselinski's nonimmigrant status prevents him from applying for certain grants that would be of benefit not only to his area of expertise, but also to the United States. This is true because some of the grants would come from the U.S. government.

3.      Plaintiff is without adequate remedy at law and Defendants' conduct has caused and will continue to cause irreparable harm absent injunctive relief. Each day that Dr. Weselinski is not a Lawful Permanent Resident ("LPR") is a day that he is ineligible for funding that would help advance research in an academic field of great interest to many sectors outside traditional academic circles, particularly U.S. government agencies. Each day that USCIS's impermissible denial stands is a day in which educational institutions, such as Michigan Technological University, and highly qualified foreign nationals, such as Dr. Weselinski, have less trust in the predictability and fairness of the immigration process. USCIS fees for immigration benefits are substantial. No applicant should have to pay so much for a decision that is arbitrary and capricious and without observance of procedure required by law.

4.      This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §551, *et seq.*, the Immigration and Nationality act ("INA"), 8 U.S.C. § 1101, *et seq.*, as amended, and the regulations thereunder at 8 C.F.R. § 1.1, *et seq.*

5.      The allegations set forth in this complaint show that, in denying Dr. Weselinski's I-140 petition, USCIS (1) misconstrued federal laws and regulations; (2) ignored large and material portions of the submitted evidence; (3) impermissibly imposed novel and substantial evidentiary standards; and (4) failed to follow its own adjudicatory procedures.

6.      Dr. Weselinski seeks a declaration that USCIS's decision violated the APA because its action, findings, and conclusions were (1) arbitrary and capricious, an abuse of discretion, and not in accordance with the law; and (2) without observance of procedure required by law. As a result of USCIS's improper acts, the Court should set aside as unlawful USCIS's decision.

7.      Plaintiff also asks the Court to award injunctive relief, attorneys' fees, and any other relief the Court deems appropriate in this matter. As is evidenced by the allegations of this Complaint, Plaintiff is without adequate remedy at law and Defendants' conduct has caused and will continue to cause harm absent injunctive relief.

3

## II.    JURISDICTION AND VENUE

8.      This Honorable Court has subject matter jurisdiction over the claims alleged in this action under: (1) 28 U.S.C. §1331 (federal question jurisdiction), because Plaintiffs' claims arise under the laws of the United States, including 5 U.S.C. §§555 and 701, *et seq.* (APA), 8 U.S.C. §1101 *et seq.* (Immigration and Nationality Act) ("INA") (including 8 U.S.C. §§1182, 1184, 1201, 1202 and1204); and (2) 28 U.S.C. §1361 (Mandamus Act).  This court may grant relief in this action under 5 U.S.C. §§553, *et seq.* and §§701 *et seq.* (APA); 28 U.S.C. §§1361, *et seq.* (Mandamus Act), 28 U.S.C. §§651, *et seq.* (All Writs Act), and 28 U.S.C. §§2201, *et seq.* (Declaratory Judgment Act).

## III.    VENUE

9.      Venue is properly with this Court, pursuant to 28 U.S.C. §1391(e)(1), because Defendants are officers or employees of the United States or agencies thereof acting in their official capacities.

10.     Defendant Acting Secretary Elaine Duke is an officer of the Department of Homeland Security ("DHS") and is responsible for the operation of DHS and the sub-agency USCIS, which are both headquartered in the District of Columbia.  Defendant Duke performs a significant amount of her official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia.

11.     Defendant Attorney General Jefferson B. Sessions III is an officer of the Department of Justice ("DOJ"), which is headquartered in the District of Columbia. Defendant Sessions performs a significant amount of his official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia.

12.     Defendant L. Francis Cissna is an officer of DHS and the Director of USCIS, which is headquartered in the District of Columbia.  Defendant Cissna performs a significant

amount of his official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia.

13.     Defendant Donald Neufeld is an officer of DHS and Associate Director, Service Center Operations Directorate of USCIS, which is headquartered in the District of Columbia. Defendant Neufeld performs a significant amount of his official duties in the District of Columbia and resides, for purposes of venue, within the District of Columbia.

14.     Defendant Kristine A. Crandall is an officer of DHS and USCIS.  Defendant Crandall is the Acting Director of the Nebraska Service Center.  Defendant Crandall is the official generally charged with supervisory responsibility over I-140 Petitions adjudicated at the Nebraska Service Center, subject to the discretion of Defendant Neufeld, who resides in the District of Columbia.

15.     A substantial part of the events or omissions giving rise to Plaintiff's Complaint occurred within the offices of the DHS and USCIS, which are all headquartered in the District of Columbia; and

16.     Judicial economy and the interests of justice warrant that Plaintiffs' action be brought and decided in the District of Columbia, because the above-listed Defendant U.S. officials perform a significant amount of their official duties, and their agencies are all located, within the jurisdiction of this Honorable Court, or are subject to the direction of their Agency Director who is similarly located within the District of Columbia.

17.     Due to the decentralized nature of USCIS case processing, which allows for the transfer of nonimmigrant benefit Petitions, Applications, and other filings to any USCIS facility located anywhere in the United States of America, at any time, venue is only appropriate in the District Court for the District of Columbia.

## IV.        **PARTIES**

18.        Plaintiff Lukasz Jan Weselinski is a citizen and national of Poland.  He resides at 540 Lake Avenue, Apt. 5, Hancock, MI 49930-1938.

19.        Elaine Duke is the Acting Secretary of the DHS and this action is brought against her in her official capacity only, as well as her successors and assigns.  She is charged with overseeing the DHS, which includes sub-agency USCIS, and with implementing the INA.  She is further authorized to delegate certain powers and authority to subordinate employees of USCIS, which is an agency within the DHS.   DHS is headquartered at 245 Murray Lane, S.W., Washington, D.C. 20598.

20.        Jefferson B. Sessions III is the Attorney General of the United States and this action is brought against him in his official capacity only, as well as his successors and assigns. He is charged with certain functions involved in the implementation of the INA.  The DOJ is headquartered at 950 Pennsylvania Avenue, N.W., Washington, D.C.  20530-0001.

21.        L. Francis Cissna is the Director of the USCIS, who is named herein only in his official capacity, as well as his successors and assigns.  He is generally charged with the implementation of the INA, and is further authorized to delegate certain powers and authority to subordinate employees of the USCIS.  USCIS is headquartered at 20 Massachusetts Avenue, N.W., Washington, D.C. 20529.

22.        Donald Neufeld is the Associate Director, Service Center Operations Directorate of USCIS, who is named herein only in his official capacity, as well as his successors and assigns.  He is generally charged with overseeing all the activities of the four (4) regional Service Centers of USCIS, and is further authorized to delegate certain powers and authority to subordinate employees of USCIS. USCIS is headquartered at 20 Massachusetts Avenue, N.W., Washington, D.C. 20529.

23.        Kristine A. Crandall is the Acting Director of the Nebraska Service Center of the USCIS, located at 850 S Street, Lincoln, NE 68501, and is named herein only in her official

capacity, as well as her successors and assigns. The I-140 petition filed by Plaintiff, which is the subject of this Complaint, was adjudicated by the Nebraska Service Center.

## V.    PROCEDURAL AND LEGAL BACKGROUND

24.    On June 14, 2017, Plaintiff filed the I-140 petition seeking to classify himself as an employment-based immigrant, specifically an alien of extraordinary ability in the field of synthetic organic chemistry in the areas of the synthesis and application of organic catalysts, the synthesis of metal-organic frameworks and organic polymers, and the application of organic compounds for biological systems, in accordance with 8 U.S.C. §1153(b)(1)(A).

25.    On June 19, 2017, USCIS issued a Notice of Intent to Deny ("NOID") Plaintiff's I-140 petition, attached as Exhibit A. Plaintiff responded to the NOID on July 21, 2017, further articulating the initially submitted evidence, providing additional rebuttal evidence, and arguing that USCIS misconstrued federal statutory and regulatory requirements, ignored large and material portions of the submitted evidence, impermissibility imposed novel and substantial evidentiary standards, and failed to follow its own adjudicatory procedures. *See Id.*

26.    On July 31, 2017, USCIS issued a Decision (hereinafter "denial"), denying Plaintiff's I-140 petition. USCIS's denial constitutes final agency action. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993) (holding APA §10(c) prevents federal court from requiring exhaustion of administrative remedies when neither statute nor regulation mandates it).

27.    *Aliens of Extraordinary Ability* is one of three classifications of Priority Workers under the first preference category of employment based visas. 8 U.S.C. §1153(b)(1)(A). The other two classifications of Priority Workers under 8 U.S.C. §1153(b)(1) are *outstanding professors or researchers* and *certain multinational executives and managers*. *See* 8 U.S.C. §§1153(b)(1)(B) and (C).

28.    Qualification as an alien of extraordinary ability is carefully defined in the statute as one who has "extraordinary ability in the sciences, arts, education, business, or athletics

which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation," who intends "to work in the area of extraordinary ability," and that such an alien's immigration will "substantially benefit prospectively the United States." 8 U.S.C. §§1153(b)(1)(A)(i), (ii), and (iii).

29.    The regulations explain that an alien of extraordinary ability is identified as someone who has "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). This is established with "evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." *Id.*

30.    USCIS has adopted the two-part test established by the U.S. Court of Appeals for the Ninth Circuit in *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115 (9th Cir. 2010), as part of its adjudicatory policy for evaluating the evidence submitted in support of petitions seeking the alien of extraordinary ability classification. *See* AFM Chapter 22.2(i)(1)(A).

31.    On December 22, 2010, USCIS issued a guidance document, the PM-602-0005.1: Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the Adjudicator's Field Manual (AFM) Chapter 22.2, AFM Update AD11-14, (hereinafter PM-602-0005.1), to provide instructions to officers adjudicating I-140 petitions seeking approval pursuant to 8 U.S.C. §1153(b)(1)(A). *See*, Exhibit C. PM-602-0005.1 was incorporated into the AFM at Chapter 22.2(i)(1)(A). *See*, Exhibit D.

A.    PM-602-0005.1 stated that "USCIS agrees with the *Kazarian* court's two-part adjudicative approach to evaluating evidence submitted in connection with petitions for aliens of extraordinary ability." *Id.* at 3.

B.    PM-602-0005.1 also stated that the two-part approach requires to "first objectively evaluate each type of evidence submitted to determine if it meets the parameters applicable to that type of evidence described in the regulations (also referred

to as 'regulatory criteria'). USCIS officers then should consider all of the evidence in totality in making the final merits determination regarding the required high level of expertise for" 8 U.S.C. §1153(b)(1)(A). *Id.* at 4.

32.     With respect to part one of the *Kazarian* Court's approach, called "the Criteria Analysis" in the NOID and denial, USCIS concluded that Plaintiff met at least 3 of the 10 regulatory criteria: 8 C.F.R. §§204.5(h)(3)(iv), (v), and (iv).

33.     With respect to part two, called the "Final Merits Analysis" in the NOID and denial, USCIS failed to "consider all of the evidence in totality," but instead ignored some evidence and parsed each piece of remaining evidence for failing to meet standards absent from statute, regulation and even policy. PM-602-0005.1 at 4.

34.     In the denial, USCIS concluded its Final Merits Analysis by stating that Plaintiff failed to demonstrate "sustained national or international acclaim and level of expertise indicating that he is one of that small percentage who has risen to the very top of the field of endeavor." Exhibit A at 6.


## VI.     FACTUAL ALLEGATIONS

35.     Plaintiff submitted ample evidence showing that he, Dr. Weselinski, is recognized internationally as extraordinary in the field of synthetic organic chemistry in the areas of the synthesis and application of organic catalysts, the synthesis of metal-organic frameworks and organic polymers, and the application of organic compounds for biological systems. Such evidence included, but was not limited to, three types of initial evidence listed at 8 C.F.R. §204.5(h)(3).

36.     Dr. Weselinski's work has "sustained national or international acclaim and…his…achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). Plaintiff's work is significantly influential and has directly impacted the development of his area of research in the field of synthetic organic chemistry. Dr. Weselinski's work in his area of the

synthetic organic chemistry field is multidisciplinary with applications to other fields of scientific research.

37.    Plaintiff has made major contributions to the design and development of metal-organic frameworks (MOFs), "which are of primary importance to carbon capture and utilization technologies to reduce the global emission of CO2."  Exhibit E at 4-5. *See* Exhibit F at 7-15.

38.    Dr. Weselinski has produced original, ground-breaking work in his field of research that is considered unique and novel by experts within the field. Some of these discoveries have been patented by Plaintiff because of their status as "new and useful." 35 U.S.C. §101. The work reflected in Plaintiff's patents is recognized by independent experts in the field of Synthetic Organic Chemistry as original and groundbreaking.  *See* Exhibit E at 5-6 discussing the letters from independent experts submitted with the I-140 petition.  *See also* Exhibit F at 15-18.

39.    Plaintiff has, like many scientists, sometimes collaborated with others to develop his work. In this instance, Dr. Weselinski has worked with the company Saudi Aramco and the King Abdullah University of Science and Technology to commercialize some of his original contributions to his field of work. *See* Exhibit F at 16-17.

40.    At the time of filing the I-140 petition, Plaintiff had also published 17 articles, on 6 of which he was first author, in 12 different prestigious peer-reviewed publications. Exhibit E at 9-12. Plaintiff's articles have been highlighted in several ways recognizing the importance of his work to the scientific community and furthering his own reputation in the United States and abroad. Exhibit E at 12-15. Three of Dr. Weselinski's articles, in which he is first author "were selected to be highlighted as abstract[s] in *Cheminform*,…one of the world's leading chemical abstract services." Exhibit E at 15. Two of Plaintiff's articles were recognized as "Highly Cited Papers" by January/February 2017 because they "received enough citations to place them in the top 1% of the academic field of Chemistry…for the field and publication year." Exhibit E at 15.

41.     Dr. Weselinski's work has been cited hundreds of times. At the time of the I-140 petition being filed his citation count ran over 400 and by time the NOID was being responded to his citation count ran to over 500. *See* Exhibit E at 17 and Exhibit F at 24. In both the I-140 petition and in the NOID response, Plaintiff has provided a multi-page, single-space list of all the professional journals in which his work has been cited by other people. *See* Exhibit E at 17-19 and Exhibit F at 24-27. These citations are favorable and recognize, like the expert testimony accompanying the I-140 petition and NOID, that Plaintiff's scientific work is furthering the work in his field and is being relied upon by other scientists in their own work. Exhibit E at 20-21.

42.     Plaintiff's scholarly articles are read by the scientific community within his field of work because of the scale and scope of their original content. Details regarding these articles and the nature of their contributions were detailed in the I-140 petition as well as in the response to the NOID. *See* Exhibit E and Exhibit F.

43.     Plaintiff has also participated at 12 international, national and regional meetings where he has had the opportunity to further communicate his original and scientifically significant research findings.

44.     The Plaintiff's expertise and acclaim is evident by the frequency with which he has been serving as a reviewer of the work of others. By the time of the filing of this I-140 petition, Dr. Weselinski had served as a reviewer 34 times during 3.5 years. Plaintiff's selection for this role, on an international basis, critical to the publication of qualitative and reliable scientific work further demonstrates the significant scale and scope of his recognition in the field. *See* Exhibit F at 6-7.

45.     The independent experts who submitted testimony on Dr. Weselinski's behalf were insistent on his placement at the top of his field of work. This level of commitment was reflected by the second letter provided by Dr. Christian Serre to USCIS, explaining that the NOID's comparison of Plaintiff against Dr. Serre was improper as detrimental and misconstruing

the full and complete nature of Dr. Weselinski's extraordinarily significant scientific contributions. *See* Exhibit E and Exhibit F.

46.     Plaintiff is currently employed as a Research Scientist in the Department of Chemistry at Michigan Technological University. In this position, he continues to pursue his research.

## VII.     FIRST CLAIM FOR RELIEF

Violation of APA for Agency Action that is
Arbitrary and Capricious, an Abuse of Discretion,
and Not in Accordance with Law
5 U.S.C. §§702, 706(2)(A)

47.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

48.     Nowhere in the denial's analysis did USCIS mention, much less discuss, Dr. Weselinski's specific academic area. *See* Exhibit A. According to 8 U.S.C. §1153(b)(b)(1)(A), an "alien has extraordinary ability in the sciences…recognized in the field through extensive documentation." Similarly, the regulations at 8 C.F.R. §204.5(h), *et seq.* repeatedly connect this phrase, "extraordinary ability" to its being shown "in the field of expertise." Because USCIS failed to evaluate the evidence in the context of Plaintiff's specific academic field, USCIS's denial of his I-140 petition was arbitrary and capricious, an abuse of discretion, and not in accordance with the law.

49.     In reaching its conclusion regarding the Final Merits Analysis, USCIS ignored large material portions of the submitted evidence.

50.     The denial's treatment of Plaintiff's "original…contributions of major significance in the field" as merely helpful is arbitrary and capricious because it fails to consider what Plaintiff has accomplished, the high number of citations of his work, the comments about his work by

those citing to it or the expert testimony in the totality of the evidence as required by the Final Merits Analysis.

51.    USCIS imposed new legal criteria in the Final Merits Analysis without any explanation for their basis or their relevance to the adjudicatory process of weighing the collective impact or effect of all the evidence.

52.    In reaching its conclusions, USCIS misconstrued the evidentiary criteria listed in 8 C.F.R. §204.5(h)(3) and impermissibly imposed novel and substantial evidentiary standards described in the following allegations.

53.    The findings and rationale of the Denial copied the language of the NOID with only the following modifications:

   A.    The NOID concluded that Plaintiff established his satisfaction of 3 of the 10 types of evidence listed in 8 C.F.R. §2045.5(h)(3), but when USCIS proceeded to conduct the "Final Merits Determination," it proceeded to "impose…a threshold requirement" for the evidence to be considered for demonstrating Plaintiff's satisfaction of this part of the case analysis. *Kazarian*, 596 F. 3d at 1121. Plaintiff responded to USCIS pointing out that the Final Merits Determination in Kazarian required "USCIS [to] determine[] whether the evidence [satisfying 8 C.F.R. §§204.5(h)(3)(iv), (v), and (vi)] demonstrates both a level of expertise…[and] sustained national or international acclaim" required weighing the totality of all the evidence together. *Kazarian*, 596 F. 3d at 1119-20. *See* <u>PM-602-0005.1</u>, at 4 (stating what the Final Merits Determination involves). However, the denial retained the same flawed analysis in the NOID, imposing novel requirements absent from both statute and regulation instead of considering the evidence in total. *See* Exhibits C and D.

   B.    The NOID pointed out that Plaintiff's citations "added to the pool of knowledge, but appear to have advanced the field only incrementally rather than substantially." Exhibit B at 4. Plaintiff noted that USCIS failed to provide the evidence of

13

experts and their "many over 1,000 citations" as required by 8 C.F.R. § 103.2(b)(16)(i), or the period in which they were accrued. Exhibit B at 4. *See* Exhibit F at 30-37. The over 400 citations of Plaintiff were accrued from works published from just 2014. *See*, Exhibit F. Nevertheless, USCIS retained the reasoning of the NOID in the denial and added that the 30,000 views of 6 of Plaintiff's scholarly articles has "little probative value." Exhibit A at 5.

C.      In the NOID, USCIS alleged that "it appear[ed] that it [the over 400 citations of Plaintiff's work] was used as background information." Exhibit B at 4. Defendants failed to explain the basis for concluding that the hundreds of citations to Plaintiff's as "background information." Following Plaintiff's reply to the NOID that his work was being favorably cited, the denial changed this language to instead state that the citations were "without demonstration of significant reliance upon his work." Exhibit A at 5. *See* Exhibit F at 30-37.

D.      In considering Plaintiff's evidence of his original contributions, specifically that he has participated in professional events to share them, the NOID focused on just "a poster at the ACS 253rd National Meeting." Exhibit B at 4. The response reiterated that USCIS was imposing novel requirements and that Defendants appeared to ignore the evidence that Plaintiff appeared or was accepted at 12 international meetings. *See*, Exhibit F at 28-29. The denial continued its unexplained focus on the "ACS 253rd National Meeting," and added the new requirement that "presenting a poster" must show that it "places you among the very top of your field on par with acclaimed experts appearing at the event." Exhibit A at 5.

E.      The NOID dismissed the expert opinion letters saying USCIS has full "discretion, [to] use as advisory opinion statements" the testimony filed with the I-140 petition. Exhibit B at 4. The NOID also compared the experts' credentials to Plaintiff to allege his lack of extraordinary ability and then dismissed the probative value of this

testimony because the letters had been requested to support the I-140 petition. Exhibit F at 4. In response to USCIS, a review of the Precedent Decisions governing the agency's consideration of expert testimony pursuant to 8 C.F.R. §103.10(b), was presented along with a rebuttal letter addressed to USCIS from one expert, Dr. Christian Serre, explaining why a comparison to Plaintiff was an inaccurate means of evaluating his acclaim. *See*, Exhibit F at 10-15. Subsequently, the denial removed the statement regarding its discretion, but dismissed the probative value of the expert testimony and again compared Plaintiff to Dr. Serre. *See*, Exhibit A at 5.

54.    The denial arbitrarily states that "USCIS examined the evidence presented in its entirety to make an initial final merits determination, of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the beneficiary [sic] possesses the high level of expertise required for the E11 immigrant classification." Exhibit A at 4. While the government states that it is applying the test imposed by the "broad precedential authority" of *Kazarian*, 596 F.3d 1115, what actually happens in the Final Merits Analysis is not a weighing of all the evidence for its effect in the totality. Exhibit A at 3.

55.    USCIS placed undue emphasis on Plaintiff's citation history and failed to give due consideration to all of the submitted evidence showing Dr. Weselinski's original contributions to, and international recognition as possessing extraordinary ability in the field of synthetic organic chemistry's area of synthesis and application of organic catalysts, the synthesis of metal organic frameworks and organic polymers, and the application of organic compounds for biological systems.

56.    The discussion of scholarly citations by USCIS reflects the same mistake of the NOID, specifically treating the nature and quantity of citations as a distinct legal requirement instead of merely a reflection of the fact that Plaintiff's work is being cited, studied and used by other scientists.

15

57.     Defendants' erroneous understanding of the evidentiary nature of citations of Plaintiff's work is reflected in the denial's statement that the citations of Plaintiff's work "appear to have advanced the field only incrementally." Exhibit A at 5. This is substantive judgment regarding the citations themselves without consideration of the probative value of this evidence. The number of citations, the journals in which the citations appear, and the short time period in which Plaintiff's work has produced this volume of citations supports Plaintiff's position that he has made original contributions and published his work, which are regulatory elements for establishing eligibility for approval of the I-140 petition.

58.     There is no support in the law or regulations for the position that frequent, independent citations are a necessary condition for the conclusion that an alien has made original contributions to the academic field. In fact, citations of Plaintiff's work is not a regulatory criteria. The point of Plaintiff providing evidence of his citations is to show the significance of his work and the impact on the field.

59.     USCIS incorrectly concluded that the downloading of any work has no probative value, maintaining that there is no way of measuring a work's influence on the field, the number of those who are downloading the alien's work, and who they are.

60.     USCIS unlawfully, arbitrarily and capriciously has substituted Google Scholar citations for a review and consideration of all the evidence presented satisfying the criteria in 8 C.F.R. §§204.5(h)(3)(iv), (v), and (vi) under the Final Merits Analysis that is supposed to be conducted according to the AFM.

61.     USCIS "evaluate[s] [Plaintiff's] participation [as the judge of the work of others] to determine whether it was indicative of [him] being one of the small percentage" at the top of his field. Exhibit A at 4. The decision focuses on the criteria for serving as a peer reviewer on the journals identified by Plaintiff. The denial fails to consider the weight of that being a peer reviewer of the identified professional journals carries when viewed in concert with the volume

of reviews, the nature of the publications themselves as well as the effect of someone like Plaintiff who has produced original, patented work serving in the role of reviewer.

62.     The denial finds that Plaintiff has failed to establish sustained national or international acclaim based on the one criteria of judging because he "did not have the final authority" over the work. Exhibit A at 5. USCIS fails to explain or otherwise indicate the reason for the absence of such authority deprives this evidence of probative value. USCIS also fails to explain the basis for concluding that possession of such authority by a professional journal peer reviewer is a prerequisite to such evidence being considered in a Final Merits Analysis.

63.     The denial arbitrarily and capriciously states that Plaintiff's work on metal-organic frameworks is "collaborative" and "one example among many for the use of MOFs." These statements are inconsistent with the evidence. Exhibit A at 4. The record provided Defendants with evidence that Plaintiff's contribution to metal-organic frameworks was "original" and "of major significance." *See*, Exhibits E and F. Plaintiff also provided USCIS with testimony from independent expert witnesses confirming the novelty, originality and importance of Plaintiff's work. USCIS concluded that Plaintiff satisfied 8 C.F.R. §204.5(h)(3)(v). *Id.* However, the statements in the denial's Final Merits Analysis regarding the nature and value of Plaintiff's work seek to provide a basis for unlawfully concluding that Plaintiff does not satisfy the statutory and regulatory definition of an "alien of extraordinary ability."

64.     The denial's discussion of Plaintiff's two patents and the weight they carry in the Final Merits Determination mirrors the language in the NOID. There is no indication that the originality and significance necessary for a patent was given any weight despite the probative value it carries.

65.     Defendants allege that "it is in the use of such patents where we can determine their significance" and arbitrarily and capriciously ignore the evidence in the record demonstrating that Plaintiff's two patents constitute "the alien's original scientific…contributions of major significance in the field." 8 C.F.R. §204.5(h)(3)(v). However, in Plaintiff's evidence were

multiple citations to work covered by his patents. This reference by and reliance on Plaintiff's work by others demonstrates the significance and impact of Dr. Weselinski's work on the field.

66.     USCIS failed to consider Plaintiff's number and quality of publications in determining that he failed to meet the original contributions criterion. Defendants were provided with a range of evidence documenting the treatment of Plaintiff's published work that was not weighed together for their cumulative probative value and effect.

67.     Defendants' denial arbitrarily and capriciously imposes a novel requirement absent from 8 C.F.R. §204.5(h)(3)(v) that participation or acceptance at a dozen international conferences and meetings cannot be used to substantiate that Plaintiff is recognized as an expert in his field of research unless the criteria for participation establish that participation "places you among the very top of your field on par with acclaimed experts who serve as keynote speakers." Exhibit A at 5. The regulatory criteria do not require it and there is nothing about the adjudicatory process of weighing the collective.

68.     Defendants arbitrarily and capriciously allege that "letters solicited by an alien in support of an immigration petition are of less weight than preexisting, independent evidence." Exhibit A at 7. This novel requirement is contrary to the decision in *Kazarian*, the Precedent Decisions governing treatment of independent experts including *Matter of D-R-* and *Matter of Skirball Cultural Center*, and AFM Chapter 22.2(i)(1)(D). *See*, Exhibits C and D.

69.     Defendants arbitrarily dismiss the evidence of the commercial interest and development of one of Plaintiff's patent by Saudi Aramco and King Abdullah University of Science and Technology because "[t]he contract…does not indicate that the petitioner held a leading role in this work in which he was not listed as a first-author or primary contact." Exhibit A at 7. Defendants failed to consider the evidence of the documented connection between Plaintiff's U.S. Patent Application Publication Number 20170096394 A1 and World Patent application Number WO201583813 A2, his research on metal-organic frameworks, and the

contract commercializing this work between Saudi Aramco and King Abdullah University of Science and Technology.

70.     The AFM also suggests that expert opinion letters can "explain in specific terms why the witnesses believe the beneficiary [or self-petitioner like Plaintiff] to be of E11 [8 U.S.C. §1153(b)(1)(A)] caliber." AFM Chapter 22.2(i)(1)(D), in Exhibit D.  The AFM also notes that any "relationship or affiliation" between the expert and the self-petitioner "is also a factor to consider" when weighing the testimony submitted with USCIS. *Id.* The AFM notes that "[i]t is generally expected that an individual whose accomplishments have garnered sustained national or international acclaim would have received recognition…well beyond the circle of his or her personal and professional acquaintances." *Id.*

71.     USCIS is responsible for determining eligibility for a benefit and is not required to cede that authority to an expert testifying on behalf of a petitioner filing an I-140 petition. However, USCIS has no authority for dismissing the probative value of credible expert testimony supported by and consistent with evidence in the record of proceeding. *See Matter of Skirball Cultural Center*, 25 I&N Dec. 799 (AAO 2012).

72.     USCIS dismissed the expert opinion letters based on *Matter of Caron International, Inc.,* 19 I&N Dec. 791, 795 (Comm'r 1988), even though *Matter of Skirball Cultural Center*, 25 I&N Dec. 799, 805-06 (AAO 2012), established that "USCIS may reject an expert opinion letter, or give it less weight, if it is not in accord with other information in the record or if it is in any way questionable."

73.     The USCIS denial dismisses the letters despite "not[ing] the distinguished nature of the experts who wrote on [Plaintiff's] behalf" based on a requirement that does not exist in the law: "The letters do not point to independent, unsolicited and pre-existent documentation relating to your significant contributions, with the exception of citatory evidence." Exhibit A at 4.

74.     "An expert witness is broadly defined as someone who is 'qualified as an expert by knowledge, skill, experience, training, or education….An expert has scientific, technical, or

other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." *Matter of D-R-*, 25 I&N Dec. 445, 459 (BIA 2011)

75.    In discussing the probative analysis that experts in the field may provide in opinion letters, the AFM explains that they should be "corroborated by documentary evidence in the record" and provide "specific terms why the witnesses believe" someone to be an alien of extraordinary ability. AFM Chapter 22.2(i)(1)(D), in Exhibit D.

76.    None of the expert letters submitted in support of Plaintiff's I-140 Petition lack specifics or corroboration. All of the letters specifically identify Dr. Weselinski's contribution and provide specific examples of how those contributions are original in nature and have influenced the development of his field of synthetic organic chemistry in the areas of the synthesis and application of organic catalysts, the synthesis of metal-organic frameworks and organic polymers, and the application of organic compounds for biological systems.

77.    All of the 8 independent experts provided their credentials with the letter that each produced citing specific examples and reasons for concluding that Plaintiff has achieved the acclaim and success required by the statute and regulation, as supported by the evidence in the record.

78.    USCIS failed to consider the fact that Plaintiff's particular research area on metal organic frameworks is emerging and new to other people who have been working in the wider field of Synthetic Organic Chemistry for decades.

79.    USCIS mischaracterizes the expert witnesses as "the petitioner's professional contacts" despite the statements by (1) Dr. Christian Serre, (2) Dr. Xin Cui, (3) Dr. Jianfeng Cai, (4) Dr. Leonard Barbour, (5) Dr. Cafer Yavuz, (6) Dr. Jerzy Wicha, (7) Dr. Roman Manetsch, and (8) Dr. Michael O'Keefe, to the contrary.

80.    USCIS takes one of the eight expert witness letters, from Dr. Christian Serre, and compares and contrasts Plaintiff against him. *See* Exhibit A.

A.    USCIS engages in this comparison without support under the law.

B.      USCIS creates a new standard of extraordinary ability based on the credentials and accomplishments of Dr. Serre.

C.      USCIS engages in this comparison of Plaintiff with Dr. Serre despite Dr. Serre providing a second letter, following his first letter, to specifically respond to USCIS engaging in a comparison on him with Plaintiff. *See* Exhibit B.

81.     The treatment by USCIS of the expert opinion letters is inconsistent with the statute, the regulation, the AFM, and Precedent Decisions governing adjudications by Defendants.

82.     USCIS imposes a novel requirement absent from the stature and regulation that to qualify for classification under 8 U.S.C. §1153(b)(1)(A) that "it is necessary for this classification to compare the petitioner with not only those have expertise at his level but with those at the very top of the field, which is why we utilize Google Scholar for this comparison." Exhibit A at 6.

83.     USCIS unlawfully, arbitrarily and capriciously has substituted the credentials of experts giving testimony on behalf of Plaintiff for the Final Merits Analysis evaluating the totality of the evidence filed with the I-140 petition and in reply to the NOID.

84.     USCIS re-adjudicates the list of criteria under the indicia of the Final Merits Analysis.

85.     USCIS's conduct of the Final Merits Analysis engages in the very act that the *Kazarian* Court said was prohibited.

86.     USCIS's conduct of the Final Merits Analysis fails to conduct the review of the weight of all the evidence together as described by the *Kazarian* Court and adopted by Defendants.

## VIII.      SECOND CLAIM FOR RELIEF

Violation of APA for Agency Action that is

21

Without Observance of Procedure Required by Law
5 U.S.C. §§702, 706(2)(D)

87.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

88.     In the denial, USCIS not only impermissibly imposed substantive and novel evidentiary standards, but also failed to follow its own procedures, namely the two-part test established by the *Kazarian* decision that USCIS stated in the PM-602-0005.1 was being adopted as part of its adjudicatory policy for determining eligibility under 8 U.S.C. §1153(b)(1)(A). *See* AFM Chapter 22.2(i)(1)(A) (incorporating PM-602-0005.1's contents into policy adjudicators are direction by AFM Chapter 3.4(a) to follow).

89.     In its denial, USCIS stated that it was conducting a review of Plaintiff's evidence under the Final Merits Analysis involving the consideration of all the evidence in its totality, but instead was dismissive of individual materials based on criteria absent from the regulation or the statute.

90.     In determining that Plaintiff did not satisfy the Final Merits Analysis, USCIS impermissibly made determinations relative to the individual weight of a piece of evidence without any discussion or consideration of why the sum of all the evidence succeeded or failed to demonstrate his possession of "sustained national or international acclaim and that his…achievements have been recognized in the field of expertise." 8 C.F.R. §204.5(h)(3).

91.     USCIS also failed to follow procedure by impermissibly dismissing the expert opinion testimony as lacking probative value despite its support by evidence in the record. In the denial, USCIS critiques Plaintiff's inclusion of expert testimony as not making any contribution to the record despite the independence of the witnesses and the corroboration provided by the record of proceeding.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court issue judgment in its favor and against Defendants and issue the following relief:

(1)     A declaratory judgment setting aside as unlawful USCIS's denial of Dr. Weselinski's I-140 petition on his own behalf;

(2)     An injunction directing USCIS to reopen and adjudicate Dr. Weselinski's I-140 petition in accordance with this Court's opinion;

(3)     Declare that the agency action in this case was "arbitrary and capricious" thus violating the APA;

(4)     Declare that the agency action in this case was without observance of procedure required by law thus violating the APA;

(5)     Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA.

(6)     Grant such further relief as this court deems reasonable and appropriate.


Respectfully submitted on this 17th day of October 2017.


                                        /s/Adam J. Rosen
                                        Adam J. Rosen, Esq.
                                        U.S. District Court Bar #MD29709
                                        Murthy Law Firm
                                        10451 Mill Run Circle, Suite 100
                                        Owings Mills, MD  21117
                                        Phone: (410) 356-5440 x232
                                        Fax:    (410) 356-5669
                                        Email:  adamr@murthy.com


                                        Attorneys for Plaintiff